IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 28, 2010

## KORINNA STEPHENS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 90415    Richard R. Baumgartner, Judge**

---

**No. E2009-02634-CCA-R3-PC - FILED OCTOBER 26, 2010**

---

The Petitioner, Korinna Stephens, appeals as of right from the order of the Knox County Criminal Court denying her petition for post-conviction relief challenging her convictions of aggravated robbery, theft of property valued at over one thousand dollars, and possession of drug paraphernalia for which she received an effective sentence of twelve years as a Range I, standard offender. On appeal, she contends that her guilty pleas were rendered involuntarily by the ineffective assistance of counsel. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Leslie M. Jeffress, Knoxville, Tennessee, for the appellant, Korinna Stephens.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Randall E. Nichols, District Attorney General; and TaKisha M. Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Petitioner's convictions arise from her involvement in the October 20, 2007 "purse-snatching" incident during which the victim was dragged approximately 125 feet beside a vehicle driven by the Petitioner's codefendant. The Petitioner testified that she was initially charged, via an arrest warrant, with especially aggravated robbery, theft of property valued at over one thousand dollars, public intoxication, and possession of drug paraphernalia.

The Petitioner testified that during her initial meeting with trial counsel, the Petitioner learned that the victim was hospitalized in the intensive care unit (ICU) for injuries sustained in the incident. The Petitioner said that trial counsel told her to "pray that [the victim did not] die because if she died, [the Petitioner] would be looking at 51 years to life in the penitentiary."

At a November 4, 2007 hearing, the Petitioner saw the victim for the first time since the incident. She said that the victim was walking with a cane. She recalled being overcome with "remorse and guilt" at the sight of the victim, an elderly woman. The Petitioner said that she began crying and "had [to be] carr[ied] out of the courtroom." The Petitioner said that she was "grateful that the victim was alive."

On November 4, the Petitioner and trial counsel discussed the possibility of a guilty plea. The Petitioner understood that she faced up to 25 years of incarceration for the especially aggravated robbery charge. On November 29, 2007, trial counsel informed the victim of the State's offer to allow the Petitioner to plead to an information charging her with aggravated robbery, and the other offenses, with an agreed effective sentence of 12 years' incarceration as a Range I, standard offender. On November 30, 2007, the Petitioner waived her right to a preliminary hearing in preparation to enter guilty pleas to an information.

On December 5, 2007, the Petitioner pled guilty as agreed. During the guilty plea submission hearing, the Petitioner showed some hesitation because she did not understand that she was pleading guilty to a theft offense related to the theft of a truck. She understood the theft offense to be related to the theft of the victim's purse, despite admitting that she also understood the offense to be a felony theft of property valued at over one thousand dollars. She stated at both the guilty plea submission hearing and the evidentiary hearing that she "did feel guilty of that robbery" but that she "didn't steal the truck." Although the trial court allowed the Petitioner some time to reconsider her plea, she ultimately decided to plead guilty to the information. She admitted that she knew prior to the entry of her guilty plea that the victim had spent six hours in the hospital, rather than a substantial time in ICU as had been reported to her by trial counsel. However, she claimed at the evidentiary hearing that had she not been misled by trial counsel's report of the victim's condition during their first meeting she believed that her case "would all have just come out different."

Trial counsel testified that he did not intentionally mislead the Petitioner concerning the victim's condition. He explained that his girlfriend was a critical care nurse at the University of Tennessee Hospital and that, through some mistake about the identity of her patient, he was led to believe that the victim was in ICU. Trial counsel recalled that the Petitioner "spent a lot of time crying" due to the severity of the offenses with which she was charged.

Trial counsel testified that the plea negotiations and guilty plea submission hearing occurred within a short time frame from the Petitioner's arrest. He said that the guilty plea submission hearing was "extremely lengthy" and that the trial judge "tried to talk [the Petitioner] out of the deal four or five times." Trial counsel said that he advised the Petitioner specifically that the theft offense related to the theft of the truck and that the victim was no longer in the hospital. He said that the "overriding factor" of the plea negotiations was to mitigate the Petitioner's sentence as much as possible so that she would have a favorable release eligibility of 30 percent, instead of the 100 percent that would have accompanied a conviction for especially aggravated robbery. Trial counsel added that the Petitioner had, in fact, reached her release eligibility by the time of the evidentiary hearing, but she had been denied parole. Trial counsel admitted that many defendants are emotional when they learn what they have been charged with and, particularly, that "[a] lot of females do spend a lot of time crying when they're in custody." He said that the Petitioner was sober while in jail and at the guilty plea submission hearing. Trial counsel testified that the decision to plead guilty was "all" the Petitioner's choice and that he told her that he was willing to go to trial.

The post-conviction court made specific findings relative to the claims alleged in the petition. The court found that the Petitioner had known that the victim was no longer hospitalized for some days prior to the entry of her guilty plea. The court also found that trial counsel advised the Petitioner that the lesser charge of aggravated robbery with an agreed 12 year sentence to be served at 30 percent was a more favorable outcome than risking a trial for especially aggravated robbery and facing the possibility of a 25 year sentence to be served at 100 percent. The court noted that the trial court had allowed the Petitioner considerable time to discuss the terms of the plea agreement after the Petitioner questioned the theft offense and indicated some misgivings about the plea. The court found that the only incident of the Petitioner's being "hysterical" occurred when she first saw the victim in court but that "[t]here's absolutely no indication that there's any show of emotion . . . when the submission hearing t[ook] place." The court also noted that the trial court afforded the Petitioner every opportunity to turn down the plea agreement at the submission hearing, but the Petitioner ultimately decided to plead guilty. Based upon these findings, the post-conviction court ruled that the Petitioner failed to prove her allegations of ineffective assistance and an involuntary plea by clear and convincing evidence and denied the petition. This timely appeal followed.

On appeal, the Petitioner contends that the misrepresentations of trial counsel regarding the victim's injuries, based upon his inadequate investigation, and the ensuing threat of greater charges in the event of the victim's death rendered her guilty pleas involuntary. The State responds that the Petitioner failed to show evidence of any deficiency or prejudice flowing from trial counsel's representation. Following our review, we agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove all factual allegations contained in the post-conviction petition by clear and convincing evidence. *See* Tenn.Code Ann. § 40-30-110(f) (2006). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n. 3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. *See Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. *Id.* at 578.

The Petitioner contends that his trial counsel was ineffective. A claim of ineffective assistance of counsel is a mixed question of law and fact. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. *Id.*

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

*Goad*, 938 S.W.2d at 370 (citing *Strickland*, 466 U.S. at 697). In the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." *Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

We conclude that the record supports the post-convictions court's findings. The Petitioner testified that she saw the victim in court several days before the entry of her guilty plea. Although she was overcome with guilt on that day, she obviously knew prior to the guilty plea submission hearing that the victim was no longer hospitalized or in imminent risk of dying. Trial counsel acknowledged that he relied on inaccurate information regarding the victim's health. Nevertheless, this mistake clearly was ameliorated by the date of the submission hearing. The transcript of the guilty plea submission hearing, which was exhibited to the evidentiary hearing, supports the post-conviction court's findings regarding the trial court's concerns that the Petitioner understand and agree to all elements of the guilty plea. The Petitioner, facing a possible 25 year sentence to be served at 100 percent, received a substantial benefit by pleading guilty to a lesser offense with an agreed effective sentence of 12 years with a 30 percent release eligibility. We agree with the post-conviction court that the Petitioner failed to prove her allegations by clear and convincing evidence. Accordingly, the order of the post-conviction court denying post-conviction relief is affirmed.

_____
NORMA MCGEE OGLE, JUDGE